## GULF, C. & S. F. RY. CO. v. GALBRAITH.
### No. 2538.

Court of Civil Appeals of Texas. El Paso.
May 14, 1931.

Rehearing Denied June 4, 1931.

Terry, Cavin & Mills, of Galveston, and Lee, Lomax & Wren and John F. McRae, all of Fort Worth, for appellant.

Le Roy A. Smith and K. Van Zandt Smith, both of Fort Worth, for appellee.

WALTHALL, J.

A. Galbraith, plaintiff, sued defendant, Gulf, Colorado & Santa Fé Railway Company, for damages for an alleged breach of a written contract in the form of a bill of lading for the transportation of a car of wheat, and the breach of an oral contract in connection with the delivery of the wheat at its destination; the shipment being over the Atchison, Topeka & Santa Fé Railway Company from Woodward, Okl., to Fort Worth, Tex., for delivery to L. O. and H. L. Street, as consignees, at Fort Worth, Tex.

It was alleged that the carload of wheat was sold by the Streets to plaintiff Galbraith, and that on July 23, 1929, and subsequently, plaintiff notified defendant through its local freight agent and its car clerk at Fort Worth that he was the owner of the car of wheat and holder of the bill of lading therefor, and requested that he be notified promptly of its arrival at Fort Worth, and that defendant agreed and contracted with plaintiff that it would do so.

Plaintiff alleged that there existed in Fort Worth at that time a general custom among carriers by rail, known to defendant and the initial carrier, that, when requested by the owner of a car of freight, the carrier at the place of destination would promptly notify the owner in Fort Worth of the arrival of such freight in carload lots, irrespective of and in addition to any requirement for notice contained in the bill of lading, and that, by reason of such custom, same became a part of said contract of carriage.

Plaintiff alleged the arrival at Fort Worth of said car of wheat on July 28, 1929, and defendant's failure to promptly notify him of such arrival, and that he did not know of such arrival until after 6 o'clock p. m. Saturday, August 3, 1929, after the close of business.

Plaintiff alleged that he purchased said wheat to sell on the Fort Worth market; stated the price on August 29th, at which time the wheat could and would have been sold on the market had defendant notified him promptly of its arrival; alleged the decline of the price of the wheat on the market and the sale at the best price obtainable

and the loss by reason of the decline in the market.

Plaintiff alleged that the car containing the shipment was in bad order when it reached Fort Worth, where, because of its condition, it leaked 950 pounds of the wheat on the ground; that plaintiff picked up and salvaged same and shipped it in another car and forwarded it with the remainder of the original shipment to Dallas, Tex., where it was sold; alleged a loss in weight in the shipment of 3,240 pounds; alleged that, by reason of delay in delivery, a wrongful charge was made and collected for demurrage in the sum of $18, and for the same reason a reconsignment charge of $2.25 was wrongfully charged and collected; alleged demand and refusal to pay his claim, and by reason of such refusal it was necessary to employ attorneys, which he did at the reasonable sum of $20, for all of which items he sues.

Defendant answered by demurrers, general and special, general denial, and that, upon the arrival of the shipment at Fort Worth, defendant had no knowledge of plaintiff's interest in the shipment; that on arrival of the shipment defendant notified the Streets, consignees, by postal placed in the mail; that on the afternoon of August 3, 1929, defendant had notice through the mail of plaintiff's ownership of the wheat, at which time defendant promptly notified plaintiff of the arrival of the wheat; that the demurrage charges were lawfully assessed and collected.

The jury found upon special issues submitted:

(1) There was a general custom in Fort Worth among the railroads to the effect that, upon previous request, the railway company bringing cars of grain into Fort Worth would notify the holder of the bill of lading where the name of such holder did not appear thereon of the arrival of such cars.

(2) Such custom was not limited solely to cases where previous requests for such notice was made in writing.

(3) Prior to July 29, 1929, plaintiff notified defendant of his ownership of the car of wheat and requested notice of its arrival.

(4) Before July 29, 1929, defendant, through its authorized agent, agreed with plaintiff to notify him of the arrival of the car in question.

On the jury's findings, judgment was entered in favor of plaintiff and against defendant for the sum of $338.10; that amount including the items of $266.96, the loss due to the decline in the market, $53.14, the value of the loss of wheat while in transit, $18 demurrage charges.

Defendant prosecutes this appeal.

## Opinion.

■ Appellant submits that, there being no finding and no basis in the evidence for any finding that appellant was guilty of any breach of its contract, or guilty of any negligence in giving the notice when the shipment arrived at Fort Worth, the court erred in assessing damages for a decline in the wheat market.

It is undisputed that the car of wheat arrived and was received by appellant at Fort Worth on July 28, 1929. It was also undisputed that the first knowledge appellee had of the arrival of the car of wheat was after 6 p. m. after the close of business on Saturday August 3, 1929. We might state here that the evidence shows that appellee could and would have sold the car of wheat on July 29, 1929, and the price at which it could have been sold had he then known of the arrival of the wheat.

The evidence is too extensive to quote at length, and we will state briefly the evidence on the point submitted. The evidence shows the custom among the railroads at Fort Worth to be substantially as alleged by plaintiff, and that it was the custom to give notice to the consignee, or to the owner of the shipment, when notified of such ownership, the same day or the day following its arrival.

Appellee testified that he notified appellant of his ownership of the car of wheat, and that he held the bill of lading, on July 22d, and every day until he got possession, and that he wanted to be notified immediately on its arrival, and that appellant (Mr. Hess, the freight agent) "promised me to notify me, each time I called, on arrival of the car. * * * The way I let him know was that I told him that we had a bill of lading on this car and wanted to be notified immediately of the arrival of it, with emphasis on 'immediately.' I emphasized that in every one of the conversations I had with him about the car."

■ Appellant complains of the judgment for $18 collected for demurrage. The freight bill appearing in the record shows that such demurrage was charged on the basis of the arrival of the car on July 28th and notice given on July 29th. No notice had been given to appellee, the owner, on July 29th; the charge should be refunded.

Appellants submit that, as to the loss of grain in transit, the evidence does not show "the true amount of grain loaded into the car in question at the point of origin. The exchange bill of lading accompanying such car was introduced in evidence, and since the notation 'SL and WTS' (Shipper's Load and Weight) appeared thereon, it thereby clearly showed on its face that the load and

count of the commodity had been made by the shipper at point of origin without participation by appellants connecting carrier." It is submitted that the burden was on appellee of showing the quantity of grain loaded in the car at the point of origin, and, no evidence having been offered to sustain that burden, judgment for $53.14 for loss of grain in transit was error.

Appellee alleged and recovered upon the allegation that 1,504 bushels of wheat, weighing 90,240 pounds, as stated in the bill of lading, were delivered to the Atchison, Topeka & Santa Fé Railway Company, appellant's connecting carrier, at Selman, Okl., for transportation to Fort Worth, Tex.; that, when said wheat was unloaded at destination there was only 87,000 pounds or $1,450 bushels, and recovered the alleged and proven value of the difference in weight of $53.14. Both parties concede that no evidence was offered by either party as to the bushels or weight of wheat loaded into the car other than as stated in the exchange bill of lading, and that no evidence was offered as to who loaded or weighed the wheat put into the car other than as indicated by the letters SL & WTS appearing on the bill of lading.

No assessment of the damages was submitted or found by the jury, and none was requested. The only issues submitted or requested have reference to the custom of giving notice of the arrival of the car at Fort Worth, and whether in fact such notice was given. At the close of the evidence appellant submitted a peremptory charge in its favor, which the court overruled.

■ Appellant relies upon that part of title 49, § 101, U. S. Code Ann., reading as follows: "The carrier may also by inserting in the bill of lading the words 'Shipper's weight, load, and count,' or other words of like purport indicate that the goods were loaded by the shipper and the description of them made by him; and if such statement be true, the carrier shall not be liable for damages caused by the improper loading or by the nonreceipt or by the misdescription of the goods described in the bill of lading."

The above-quoted part of title 49, § 101, U. S. Code Ann., does not state upon whom rests the burden of proof as to the quantity of wheat put into the car. The carrier availed itself of the provision, and inserted in the bill of lading letters indicating that the goods were loaded by the shipper, and the effect of the provision is that, "if such statement be true," the carrier shall not be liable, in this instance, for the nonreceipt of the wheat stated in the bill of lading.

■ The appellant on this issue pleaded a general denial. As we understand it, the general denial put upon appellee the burden or duty to make out a prima facie case, which was done by putting in evidence the bill of lading, which was done. That having been done and there being no special matter of defense pleaded as evidence of nonreceipt, or difference in the quantity of wheat put in the car from that stated in the bill of lading, no issue of nonreceipt or shortage was suggested. The bill of lading recited the quantity of wheat put in the car to be as pleaded by plaintiff. It is the general rule that as between the parties and their privies a bill of lading constitutes prima facie evidence of the actual delivery to the carrier of goods of the character and in the quantity therein specified. Volume 7, Tex. Jurisprudence, p. 24, par. 12, and cases cited. The bill of lading is there said to be the best evidence of delivery to the carrier, St. Louis S. W. Ry. Co. v. Cates, 15 Tex. Civ. App. 135, 38 S. W. 648, and is sufficient evidence of the shipper's ownership to entitle him to sue for loss or nondelivery. Where a prima facie showing on the issue has been made and the carrier has failed to rebut it by special matter of defense, the plaintiff is entitled to recover. Belcher v. M., K. & T. Ry. Co., 92 Tex. 593, 50 S. W. 559. As said in Fentiman v. Atchison, T. & S. F. Ry. Co., 44 Tex. Civ. App. 455, 98 S. W. 939, as a rule the prima facie case made by the shipper may only be rebutted by proof on the part of the carrier that the loss was due to one of the recognized excepted causes, or, as in Gulf, C. & S. F. Ry. Co. v. Roberts (Tex. Civ. App.) 85 S. W. 479, to some cause against which it had relieved itself from liability by a valid stipulation in the shipping contract. We see no difference between the rule to be applied in interstate and intrastate shipments in the matter discussed.

The issues not submitted to the jury, and not requested to be submitted, are found by the court on the testimony, and are sufficient to sustain the judgment.

The case is affirmed.