**HERRIN TRANSP. CO. v. SHELDON.**

No. 5846.

Court of Civil Appeals of Texas. Amarillo.

March 15, 1948.

Phinney, Romick & Hallman, of Dallas, for appellant.

Freeman, Wolfe, Keith & Milan, David H. Brown, Murry H. Nance, Jr., and J. S. Freels, all of Sherman; for appellee.

LUMPKIN, Justice.

This appeal is from a $1,500 judgment against the appellant, Herrin Transportation Company. The appellee is V. J. Sheldon, a resident of New Orleans, Louisiana. The suit grew out of a contract between Ben M. McKinney of Sherman, Texas, and the appellee. According to the terms of the contract the appellee agreed for a consideration of $2,200 to sell to McKinney and to deliver to Denison, Grayson County, Texas, a sixteen-foot sloop known as the Sorceress II. As earnest money Mr. McKinney deposited with appellee the sum of $550. The contract, dated January 12, 1946, provided that in the event the boat was not in good condition upon arrival at its destination, McKinney could refuse to accept delivery. The record reveals that the appellee, Sheldon, contracted with the appellant, Herrin Transportation Company, to deliver the Sorceress II to Denison, and on January 28, 1946, the boat completely outfitted with its mast, gear, and tackle was turned over to the appellant at the Higgins

Yards, New Orleans. On January 31, 1946, the boat arrived in Grayson County where McKinney, exercising his right under the contract, refused to accept delivery on the grounds that the mast had been damaged. McKinney instituted this suit against the appellee in the District Court of Grayson County, for a rescission of the contract and a recovery of the $550 earnest money. A writ of attachment was issued and the boat was seized by the sheriff of Grayson County and remained in his custody until the date of the trial. In response to McKinney's allegations, the appellee impleaded the appellant as a third party defendant along with North East Texas Motor Lines, Incorporated, a connecting carrier between Dallas, a terminus of the Herrin Transportation Company, and Denison.

Trial was before the court without a jury and resulted in the court finding that at the time the Sorceress II was turned over to the appellant, it was in a seaworthy condition as to its mast, gear, tackle, and hull; that the boat was transported from New Orleans to Dallas by the appellant, Herrin Transportation Company, where it was delivered to the North East Texas Motor Lines, Incorporated, and carried to Denison; that at the time the boat arrived at Denison it had been damaged during the transportation; that the damage was to the boat's mast and was of such a nature as to constitute essential and material damage to the boat; and that the damage was of such an extent as to warrant a rescission of the contract. The court further found that the appellant is a common motor freight carrier for hire within the State of Texas; that the loss and damage to the boat occurred while it was in the custody and control of the appellant; that the damage was due to the negligent handling of the boat by the appellant; and that the negligent handling of the boat was the proximate cause of the loss and damage. The trial court then found the appellee had been damaged in the amount of $1,500 and rendered judgment accordingly. The appellant gave notice and perfected its appeal to the Court of Civil Appeals at Dallas, whence it was transferred to this court by the Supreme Court of Texas.

The appellant attacks the trial court's judgment in eleven points of error, first contending that the court erred in indulging a presumption of negligence against the carrier. A review of the record reveals that the only injury to the Sorceress II complained of was damage to the mast. The evidence establishes that the mast was in a good condition when turned over to the carrier at the Higgins Yards at New Orleans. Upon arrival at Denison it was found that the mast had been splintered, had several new cross-grain cracks, and a diagonal crack. In addition there was an abrasion on the left side next to the top of the mast—an abrasion which was not there when the boat was turned over to the carrier. The evidence amply supports the court's finding that the Sorceress II was turned over to the appellant in a seaworthy condition but arrived at its destination with a damaged mast. In cases of this nature in order to recover the proof must raise the presumption that the damage complained of occurred as a result of the carrier's negligence. As applied to interstate shipments of freight over the lines of two or more connecting carriers, upon a through bill of lading issued by the initial carrier, the proof of delivering the freight in good condition to the first carrier and the delivery to the destination in a damaged condition, raises a presumption of negligence upon the part of the carriers. The initial carrier is liable for the damage unless it discharges the burden of proving that the damage resulted from some cause for which neither it nor the connecting carrier was responsible. Panhandle & S. F. Ry. Co. v. Andrews, Tex.Civ.App., 278 S.W. 478; Texas & N. O. R. Co. v. Dingfelder & Balish, Inc., Tex.Civ.App., 114 S.W.2d 666, affirmed 134 Tex. 156, 133 S.W.2d 967; Tucker v. Newth, Tex.Civ.App., 157 S.W.2d 1010; Thompson v. Associated Growers of Brownsville, Tex.Civ.App., 162 S.W.2d 754. Since the appellant wholly failed to discharge the burden cast upon it, in our opinion the record brings this case within the rules cited and for this reason we overrule the appellant's contention.

In its next three points of error the appellant asserts that the damage to the

Sorceress II resulted from inherent defects which may have been aggravated in transit. Such aggravation of inherent defects, the appellant contends, were not shown to be a proximate cause of the damage to the appellee. Our courts have held that where there are inherent defects in the goods shipped, the burden of pleading and proving negligence devolves upon the shipper. Cleburne Peanut & Products Co. v. Missouri, K. & T. Ry. Co. of Texas, Tex.Com.App., 221 S.W. 270; Galveston H. & S. A. Ry. Co. v. Licata, Tex.Com.App., 280 S.W. 540. Appellee's pleadings show that he considered the hull, mast, gear, and tackle as one unit, which taken altogether comprised the Sorceress II. The appellee pleaded that the boat was delivered to the carrier in a good condition and arrived at Denison in a damaged condition. To these allegations the appellant did not plead specifically that the Sorceress II contained inherent defects at the time it was received by the carrier for shipment, nor did the appellant set up any other affirmative defense which would require the appellee to plead and prove the negligence of the carrier. In cases of this nature, it is well settled that such an affirmative defense as is here urged by the appellant must be specifically pleaded and proved. Gulf, C. & S. F. Ry. Co. v. Roberts, Tex.Civ.App., 85 S.W. 479; Gulf, C. & S. F. Ry. Co. v. Galbraith, Tex.Civ.App., 39 S.W.2d 91. But be that as it may, the evidence does not reveal an inherent defect in the Sorceress II. The word "inherent" is defined as existing inseparably in something else—innate. The testimony shows that the boat was prepared for shipment by the Higgins Yards where it was taken out of the water and a special cradle built for it. The cradle was padded and the mast was carefully taken out of the boat and laced across the deck supported by three or four braces all securely strapped to the top of the hull. The cradle containing the hull was then loaded on a gondola trailer. The evidence reveals that the mast was forty-eight feet long; and when placed on the hull, it extended several feet past the end of the trailor. The mast was about twelve feet from the ground. From a careful review of the record it is evident that the cracks, splits, breaks, splinters, and abrasions to the mast are the result of some outside force rather than from some inherent defect. The appellant introduced several of its drivers who denied having an accident or collision which could have caused the damage to the mast. These drivers, however, were not with the boat during its entire trip, and the driver who first handled the shipment at the Higgins Yards was not called as a witness. Since the appellant failed to plead or prove that the Sorceress II contained the inherent defects responsible for her damage in transit, the burden was not upon the appellee to plead and prove negligence on the part of the carrier; and since the injuries to the mast were the proximate cause of the damage suffered by the appellee, again the trial court did not err in indulging a presumption of negligence to the appellant. For the reason stated the appellant's points of error in this connection are overruled.

In points of error five, six, seven, eight, and eleven the appellant asserts that the appellee improperly pleaded and inadequately proved the damages of which he complains; and that the trial court inaccurately applied a proper measure of damages. The appellee pleaded that undamaged, the sailboat, with all its gear intact, was of the reasonable cash market value of $2,200, but that with a damaged mast it had a reasonable cash market value of only $500. The only testimony in the record placed the original value of the boat at $2,200 and the value after being damaged at $600 or $700. The court found the figure of $700 to be correct and assessed the damage to the sailboat at $1,500. The appellant contends that the court should have fixed the amount of the damages by substracting the value of the damaged mast from the value of the undamaged mast. This contention is not well founded. The appellant introduced no proof as to the amount of damages. Unquestionably the Sorceress II was a unit. Damage to the mast was a damage to the boat as a whole.

In point of error nine, the appellant asserts that since the appellee had undertaken to repair the mast, he is now estopped from claiming greater damages than the cost of the repairs. The appellant offered

no proof nor does it contend that the mast could be repaired. Some time after the boat arrived at Denison, the appellee made an unsuccessful attempt to repair the mast. The appellant having failed to plead, prove, or offer to prove, that the mast could have been repaired, we see no basis for his contention, and therefore this point of error is overruled.

■ Finally, in its tenth point of error, the appellant contends that the trial court erred in admitting testimony on the subject of damages which were not limited to the mast. A careful reading of the record reveals that the appellee pleaded "that said boat, together with its mast, gear, and tackle, was of the reasonable cash market value of $2,200 * * * that upon delivery and after being damaged, it was of the reasonable cash market value * * * of $500." These pleadings, in our opinion are adequate to apprise the appellant of the proof it would be expected to meet and is certainly sufficient to support the proof offered by the appellee.

We have carefully reviewed the record in this case; finding no error, all of the appellant's points of error are overruled, and the judgment of the trial court is affirmed.