## GHISALBERTI et al. v. LAGARDE.
### No. 14206.

Court of Appeal of Louisiana. Orleans.
March 27, 1933.

Felix W. Gaudin, Milton R. De Reyna, and Edna K. Gaudet, all of New Orleans, for appellant.

H. W. & H. M. Robinson and Geo. E. Konrad, all of New Orleans, for appellees.

JANVIER, Judge.

Plaintiffs are the owners of an apartment building in this city. Defendant, for seven years, was lessee of the building. Plaintiffs seek to recover from defendant $2,475.13, charging that they necessarily expended that sum of money in repairing damage alleged to have been sustained by the building during the term of the lease.

Plaintiffs admit owing to defendant $426.-74 as their pro rata of insurance premiums paid by defendant and still in existence at the termination of the lease, and they also concede that there is due defendant $142.-23 for furniture purchased from her.

In the district court part of plaintiffs' claim was rejected, but items totaling $1,-031.45 were found to be due. From this the amount admittedly due by plaintiffs to defendant was deducted, and judgment was rendered against defendant for the remainder, to wit, $462.48. By reconventional demand defendant claimed that she had been greatly damaged by reason of the alleged fact that plaintiffs had forcibly taken possession of the leased premises before the expiration of the lease, and she claimed a further sum as the value of personal property which was in the premises and which she charges was destroyed or given away by one of the plaintiffs. The reconventional demand was rejected in the district court.

From the judgment rendered against her on the main demand and rejecting her reconventional demand, defendant has appealed. Plaintiffs have neither appealed nor answered the appeal taken by defendant.

We find only a few words necessary to dispose of the reconventional demand. There is no doubt that on or about September 15, which was 15 days before the lease expired, plaintiffs entered the premises and commenced making repairs thereto, but it is evident that this was done with the consent or acquiescence of defendant. It is true that such passive consent as was given probably did not contemplate that there would be any substantial interference with defendant's tenants, but it is equally true that either there was no substantial interference with these

tenants, or that, if there was, they made no complaints, and certainly no loss was caused thereby to defendant. None of the tenants vacated, and none failed to pay rent. Since the defendant had already decided not to again lease the building, she cannot complain that any loss resulted to her by reason of the subsequent moving out of any of the tenants.

■ The evidence with regard to the loss by defendant of certain personal property when plaintiffs entered the premises before the expiration of the lease does not justify a judgment in defendant's favor. It seems quite certain that this property was moved out either with defendant's consent, or without any objection on her part and with her full knowledge.

■ In the absence of an appeal by plaintiffs, we could not amend the judgment in their favor by allowing items rejected below, and, since we feel that we have already disposed of the reconventional demand, our further investigation will be limited to those items for which allowance has been made against defendant.

In the lease it was stipulated that at its expiration the premises should be delivered back to the owners in the same condition as that in which they were at the beginning of the lease, and it was also stipulated that at the beginning of the lease the property was in good condition. We also find in the lease agreement the following:

"The lessee shall also pay as part of the consideration of this lease, the cost of any alterations, changes, repairs or reconstruction of every nature and kind, whether ordinary or extraordinary, including those to the roof, sidewalks, or pavements, and sidewalk lights, which may become necessary from any or every cause, or which may be needed or required, during the entire term of this lease, to keep the property in good order and repair, except only as hereinafter specially provided for in case of damage by fire or tornado."

■ The plain purpose of this paragraph was to relieve the owners, during the existence of the lease, of the obligation which our Civil Code otherwise would have placed upon them, and to place upon the tenant the duty of making those repairs.

We also note that in another clause it is stipulated that:

"Included in this lease are all of the furniture presently contained in the apartments, halls, stairways, and all appliances and equipment now contained in the said main building belonging to Lessors, and all the tools and equipment of the elevators, boilers and sidewalk iron stanchions for electric lights, a complete inventory, including listing, description and valuation of which shall be made by Lessors and Lessee, and attached and to form part of this lease; and upon the expiration of this lease, whether by limitation or otherwise, it shall be the duty of the Lessee to return all of said furniture, appliances, equipment, tools, etc. of Lessors in like good order as received, or to pay to Lessors the valuation thereof as fixed in said inventory, with allowance for wear and tear."

■ We believe that the final phrase, "with allowance for wear and tear," meant that, if any particular article of furniture, or any tool or appliance should be lost, destroyed, or damaged, defendant's liability should be fixed in accordance with the value to be placed on each said article after deducting from the value fixed in the inventory a reasonable sum to represent depreciation accrued between the time of the making of the lease and the date of such possible loss or damage. Unfortunately, the said inventory and appraisement did not include anything but furniture and furnishings, and on it are not found any of the tools or appliances referred to.

Upon taking up a study of plaintiffs' claim, we were at once impressed by the apparent effort to charge defendant for everything that was done by plaintiffs to recondition and rehabilitate the building, and that little regard was had for the necessity of determining whether the particular work done was made necessary by damage sustained during the term of the lease. It was apparently plaintiffs' intention, since the building was quite an old one and not equipped in a modern way, to place upon defendant all possible expense of renewing the building so far as possible. Many of the items set forth in the petition, by no stretch of the imagination, could be held chargeable to defendant, and the action of the district judge in reducing the claim by more than 50 per cent. shows that he was of the same opinion as are we.

With this in mind, we have carefully checked each item allowed by our brother below, but have disagreed with him on only two.

■ He allowed $50 for reconditioning the marble in the main entrance vestibule. We find that only a few dollars would have been ample to clean this marble and restore it as near as possible to its original condition, and therefore we find it necessary to reduce this allowance to $10, making a deduction of $40 from the allowance made by our brother below.

■ Plaintiffs were also allowed $50 for two jardinieres, which, one of them finally admitted, she had actually replaced for $24.

The testimony of Mrs. Ghisalberti as to the value of these jardinieres is very interesting:

"Q. Now, in your testimony you stated that you purchased two jardinieres that were miss-

ing. Where did you buy those? A. At auction.

"Q. How much did you pay for them at auction? A. I have to tell you how much I paid for them?

"Q. Yes, absolutely. A. I don't want to say. I don't remember.

"Q. You don't remember how much you paid? A. Well, I remember, but I don't want to say. Do I have to tell?

"By the Court: If she won't tell us how much she paid, I will not allow her to recover for them.

"Mr. Gaudin: Q. How much did you pay at public auction for those two jardinieres? A. $12.00 apiece."

We must reduce the allowance on this item to $24.

■ We cannot find fault, however, with the allowances made on any of the other items. The bill of Rodick for general repairs to the roof and guttering and for various miscellaneous material was reduced from $368.10 to $145.60, and the charges allowed for are within the terms of the lease.

The plumbing bill was reduced by deducting therefrom all amounts which represented new work and not repairs, and we find no fault with the items finally allowed.

The bill of Thos. W. Hooley Metal Works Company covered work that was necessary, and while there is little doubt that, as a result of this work, the boiler and the fire escape were placed in a condition as near perfect as possible, still the reconditioning and repairing of these items were among the obligations assumed by the tenant, and these items must be allowed.

Objection is made by defendant to the bill of one Guelda for $50 for repairs to a hot water boiler; the contention being that defendant had installed a new heater only a few months before, and that there was a guaranty with the new heater, under which the plumbing establishment which installed it would have made the repairs, had they been called upon to do so. The evidence, however, convinces us that the repairs made were not to the new heater itself, but were to the brickwork, which was a part of the furnace, or burner portion of the heater, and that this would not have been included in the guaranty. Furthermore, we do not find that the defendant called the attention of plaintiffs to the fact that there was a guaranty, and, since the work was necessary, plaintiffs were justified in having it done.

The repairs to the oil burners covered by the bill of the Rogers-Higgins Company were within the contemplation of the lease. Four small bills of the Washington Ice Company for $22.50, the Bishop-Edell Machine Works for $22.00, the Dixie Mill Supply Company for $16.50, and C. C. Duble for $20 seem to us to have been rendered for repairs necessarily undertaken and included in the lease among those obligations assumed by defendant.

Strenuous objection is made to the bill of Taylor-Seidenbach, Inc., for $90, which was the cost of replacing the roof on the boiler room. The argument is made that this bill covered a new roof in its entirety, and that the old roof should have been repaired instead, but the evidence shows conclusively that the old roof was in such a dilapidated condition that it could not be repaired, and that it was cheaper to install a new one. We are further convinced that plaintiffs did not install the most expensive roof possible, but replaced the old one with one of a similar grade.

Complaint is made of a charge by the Washington Ice Company of $100 for repairing the boiler room after a certain explosion. There is no doubt that these repairs were made, and we gather from the evidence that the amount charged was reasonable. The obligation to repair such damage was placed upon defendant by the lease, and therefore the charge was correct.

■ Defendant maintains that plaintiffs should have called upon her to make the repairs before themselves undertaking to do so, and she contends that, had she been called upon to make the repairs, she could have done so at a very much cheaper price. The lease, however, placed upon her the obligation of surrendering the premises at its termination in the same condition in which they were at the beginning, and it was therefore her duty, before the termination, to determine what repairs were needed, and to make them herself. It is true that during the last fifteen days of the lease she attempted to have plaintiffs tell her what repairs they would require, and that they did not do so. Nevertheless, we believe that it was her obligation to decide for herself what was necessary, and that, since she did not do so, they were justified in making the repairs which they did make.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be, and it is, amended by reducing the amount awarded plaintiffs to $396.-48, and that, as thus amended, the judgment be, and it is, affirmed. Plaintiffs to pay costs of appeal.

Amended and affirmed.