**J. L. WHITWORTH ESTATE et al.,**
Appellants,

v.

**MANGELS OF TEXAS, INC., Appellee.**

No. 4072.

Court of Civil Appeals of Texas.

Waco.

Dec. 13, 1962.

Rehearing Denied Jan. 10, 1963.

Tom H. Kee, Waco, for appellants.

Pat Beard, Waco, for appellee.

TIREY, Justice.

The action is one by a landlord against tenant, brought after end of term of lease, for costs of repair to the leased premises and breach of tenant's express covenant to repair and to yield up the premises to the landlord in as good condition as same was when entered under the provisions of the lease. (The cause was here on a question of venue. See Tex.Civ.App., 347 S.W.2d 844). The cause was heard by the Court without a jury. The Court entered a take nothing judgment against plaintiffs and taxed the costs accordingly. Plaintiffs perfected their appeal to this Court.

A statement is necessary. The judgment is assailed on what plaintiffs designate as 13 points. (1 and 2) are to the effect that the Court erred in failing to render judgment for plaintiffs under the terms and conditions of the lease for the cost of repairs shown by the undisputed evidence to have been required to repair the damage done to the leased premises before they were yielded up to the landlord at the expiration of the lease, and because the evidence is undisputed that the defendant did not yield the premises to lessor and made no attempt to do so according to the terms of the lease; (3) Because the Court erred in its construction of the lease and in the application of the law to the undisputed facts and in failing to apply the legal measure of damages under this undisputed factual situation. We quote the Findings of Fact and Conclusions of Law:

## "FINDINGS OF FACT

"I find that the plaintiffs have not proved the condition of the premises when entered upon by defendant.

"I find that the damages complained of by plaintiff did not occur prior to the expiration of the lease in question.

"I find that the defendant did not hold over beyond the expiration of the lease.

"I find that subsequent to the expiration of the lease the premises were damaged.

"I find that plaintiffs did not prove that the damages complained of occurred prior to the delivery of the key to the premises to plaintiffs' agent.

"I find that the defendant did not cause any of the damages complained of by plaintiffs.

"I find that plaintiffs failed to prove who caused the damages complained of.

"I find that plaintiffs failed to prove any proper measure of damages."

## "CONCLUSIONS OF LAW

"I hold:

"(1) That plaintiffs must prove the condition of the premises when entered upon by defendants;

"(2) That any damages complained of must have occurred prior to the expiration of the lease or any holding over under the terms of the lease if plaintiffs cannot prove that defendant caused the damages complained of.

"(3) That the plaintiffs must prove either:

"(a) The reasonable market value of the premises before and after the damages complained of, at the time of the expiration of the lease, or any holding over, or

"(b) The cost of repairs for the damages complained of at the time of the damages complained of, less depreciation caused by ordinary wear and tear;

"(4) That the damage to the building for the removal of fixtures which defendant is authorized to remove is not measured by the cost of replacing new fixtures."

█ Plaintiffs went to trial on their first original petition and their trial amendment. Defendant went to trial on a general denial. Plaintiffs and defendant entered into a long term lease dated April 1, 1945, that expired on March 31, 1960. Plaintiffs pleaded the pertinent provisions of the lease and attached a copy of the lease to the petition as Exhibit "A", and asserted a claim for structural and other items of damages to the premises by reason of tenant's express covenants whereby lessee obligated itself to pay all damages to the premises after removing its personal property and to yield up the leased premises in as good condition as when entered by lessee, with exceptions of reasonable wear and tear. We quote the pertinent parts of the lease provisions:

"The lessor covenants that the leased premises and any alterations and improvements thereon will, at the commencement of the term hereof and during the entire term hereof, conform to the laws, ordinances, rules and regulations of all duly constituted authorities *and will be in condition suitable for the conducting of a retail store.*

"* * * *and the lessee accepts such premises as suitable for the purposes for which same are leased and accepts the building and each and every appurtenance thereof, and agrees to hold the lessor harmless from all claims for any such damage.*

"The lessor covenants and agrees that title to all fixtures, signs electric or otherwise, shelving and equipment (whether attached to the land or building or otherwise) placed on the premises by the lessee whether prior to the term of this lease or during its term or any renewal thereof, or during any continued occupancy of said premises, shall remain the property of the lessee and may be removed at any time that the lessee may desire, *provided that said lessee shall not be in default in the payment of rent and provided lessee shall pay all damage to said building resulting from said removal.*

"The lessee covenants and agrees that at the expiration of the term of this lease, it will peaceably *yield up the leased premises to the lessor in as good condition as when same were entered upon by lessee,* damage by fire and other elements and ordinary wear and tear excepted.

"This lease shall not be assigned except with the written consent of lessor, and such consent shall not be unreasonably withheld."

The entire lease was tendered in evidence.

Executor Whitworth testified to the effect that the building was in good usable condition at the beginning of the lease; that the tenant did not deliver the premises to him after its removal, and that it was about eight or ten days after the end of the lease before he could locate and obtain the keys to the building; that when he entered the building the premises were damaged, detailing the damages, and pictures were introduced showing the condition of the building; that repairs were necessary and that the reasonable cost to repair the electrical damages would be about $1100.00 or $1200.00; that the carpenter work necessary would reasonably cost $300.00. An expert electrician, Guy Hines, testified to the effect that electrical repairs would have to be made to the building, and that the reasonable cost was $1187.12. The witness Fisher, a carpenter, testified as to the damaged part of the building requiring carpenter work to be $275.00, and that such amount was a reasonable and a necessary charge. Mr. Katz, district manager for the tenant, testified to the effect that he was sent to close out the store; that he closed it on Saturday night before the end of the lease on March 31, 1960; that he began to get the merchandise ready for shipment and sold other equipment and air-conditioning to Mr. Lebowitz; that as soon as the merchandise was shipped out he left, and left the keys to the building with the local manager, Mrs. Sharp; that he gave no instructions and made no attempt to contact the landlord and yield the building to him; that his position was that after he removed the tenant's merchandise and sold the other property to Lebowitz, that he had no further responsibility for the building or to the landlord. Mrs. Sharp testified to the effect that she was in and about the store prior to March 31, 1960, and also after that date, and that after Mr. Katz left they were still working on removing the air-conditioning; that she did not deliver the keys to the building to the landlord and was not instructed to do so; that when she came by the store after the lease was ended there were some men working in the store re-

moving the lights and air-conditioning, and that she was not instructed to do otherwise and that she left the keys in the store when she left. A Mr. Mooney, witness for tenant, testified that he bought the air-conditioning equipment; that he took out only what he was supposed to take, and knew nothing about other items; that he bought the air-conditioning from the liquidator, and that Mr. Katz and Mrs. Sharp were there at the time; that he required an affidavit of ownership to the property he bought; that he obtained the keys from the man he bought the equipment from, and that about ten days after he removed the equipment Mr. Whitworth called and asked to get the keys to the building, and that he delivered the keys to Mr. Ancel Greene. Defendant's witness, McGlasson, testified to the effect that he looked in the building on the morning of the trial and stated that he estimated the reasonable cost of repairing the holes in the show windows, replacing missing boards and closing the opening on each side of the show window, to be $150.00; that he did not go into the building and figure all that Mr. Fisher figured, and that he made no estimate for the electrical part of the work.

It is our view that the evidence tendered made out a prima facie case and supports plaintiffs' allegations for relief.

■ Points 1, 2 and 3 challenge the construction given by the Court to the contract under the pleadings and the testimony tendered. We sustain each of these points. Plaintiffs have made no attempt to recover any rent or use of the holdover provisions. It is conceded under the terms of the contract that the tenant had a reasonable time to move out, and that the eight to ten days intervening between the date of termination and the date the landlord obtained the keys was not an unreasonable time. In Eckstine v. Webb Walker Jewelry Company, Tex. Civ.App., 178 S.W.2d 532, points 5–6, (ref. w. m.), we find this statement:

"The construction of the lease contract is to be governed by the general rules

of construction of written instruments; it is not contended by either party that its terms are ambiguous; so its interpretation will be arrived at by the language used and legal presumptions applicable."

That is the exact situation here. Plaintiffs pleaded a breach of covenants on the part of the tenant; that is, damage done by the removal of tenant's property, and failure to yield the premises in good condition and the measure of damages to be the cost of repair. The lease contract was a part of plaintiffs' petition and, as stated, it was tendered in evidence. Defendant pleaded only a general denial. The general denial put upon plaintiffs the burden to make out a prima facie case, which we think was done by putting in evidence the lease contract and the other testimony tendered thereon, as above detailed. Under the undisputed record, since defendant made no special defense, it was then a matter for the Court to properly construe the contract in issue. See Gulf, C. & S. F. Ry. v. Galbraith, Tex.Civ.App., 39 S.W.2d 91, points 4–9, (n. w. h.). The defendant made no contention that the language of the lease was ambiguous, and under these circumstances all the terms of the lease agreement will be construed in accordance with the language of the lease contract according to its meaning and natural import. See 10 Tex.Jur., 516, Sec. 301, Contracts; Bales v. Jones, Tex.Civ.App., 288 S.W.2d 266–268, point 1, (n. r. e.). As above stated, the district manager testified to the effect that he sold certain items, including the air-conditioning to Lebowitz, and all items of merchandise and all supplies of the tenant were shipped out on Wednesday; that the items sold were still in the building when he left, and that he did not see the building after he left, and before the landlord received the keys to the premises; that he did not deliver the premises or yield them to the landlord but rather that he turned the premises and yielded them to other parties. There was no dispute that the building was damaged, and the Court so found. In 35

T.J., 2d 593, Landlord & Tenant, we find this statement of the rule:

"A tenant obligated to return the property on the expiration of the lease in as good condition as he received it, ordinary wear and tear excepted, cannot release himself from the obligation by subletting the premises to another, where the landlord did not consent to the sublease or where the sublease was not made with any understanding on the part of landlord that the tenant was to be released from the obligations."

Citing McGaff v. Scrimshire, Tex.Civ.App., 155 S.W. 976. See also Reyes v. Smith, Tex.Civ.App., 288 S.W.2d 822, (n. r. e.); Curry v. Texas Co., Tex.Civ.App., 18 S.W. 2d 256 (s. dis.); Texas Pac. Coal & Oil Co. v. Barker, 117 Tex. 418, 6 S.W.2d 1031, 60 A.L.R. 936.

Needless to say that under the terms of the lease the landlord could not ascertain his damages to the building until the lessee had exercised its right to remove its property under the terms of the lease and return the building to the landlord. See Sanders v. Lefkovitz, Tex.Civ.App., 292 S.W. 596, points 7–8, (n. w. h.); Griffin Grocery Co. v. McBride, 235 S.W.2d 38, Supreme Court of Arkansas. See also City Hotel Co. v. Aumont Hotel Co., Tex.Civ.App., 107 S.W. 2d 1094. Here the landlord invoked the provisions of the lease when he obtained possession of the building in its damaged condition, and the record is without dispute that the lessee made no attempt to carry out the express covenants which were required of lessee by the terms of the lease.

In view of the Court's findings and contentions of appellee, we quote, in part, the pertinent testimony of the District Manager, Katz, who closed the store.

"Q. Did you sell the light fixtures in the show windows?

"A. No. I sold the light fixtures in the store in the selling area and the fitting rooms, not the light fixtures in the windows."

Katz testified that he sold such fixtures to a Mr. Lebowitz in the neighborhood of $350.00.

"Q. When did you last see Mr. Lebowitz?

   \*    \*    \*    \*    \*    \*

"A. The last time I saw him here on Wednesday around noon time when he had loaded all supplies and things he had bought on his truck and left town. I don't know exactly what time of the day it might have been, two or three o'clock on the afternoon of the Wednesday.

   \*    \*    \*    \*    \*    \*

"Q. Now, did I hear you testify that everything was out of that building at the time you left here?

   \*    \*    \*    \*    \*    \*

"A. No, there were \* \* \* the fellow who took the air-conditioner out, he was still working Tuesday and Wednesday and I think he also worked on Thursday, because it is quite involved to disassemble this air-conditioning unit and if I remember right, I think he started Tuesday.

"Q. Well, now did you give him the key? How did he get in the building?

"A. We had the key through Thursday.

   \*    \*    \*    \*    \*    \*

"Q. Now, when you left, who did you deliver those keys to?

"A. I left it with Mrs. Sharp.

   \*    \*    \*    \*    \*    \*

"Q. At that time they were still moving stuff out?

"A. Not our personal things. They were all gone.

"Q. Well, I'm talking about the air-conditioner.

"A. \* \* \* They were still working on the \* \* \* still working on the unit \* \* \* air-conditioning unit.

"Q. And you left before they had moved out the fixtures that they were supposed to move out?

"A. Yes. I left Thursday morning. Mrs. Sharp was still here.

   \*    \*    \*    \*    \*    \*

"Q. I believe you said though, however, that you left before the man, the employees or whoever it was supposed to take out the air-conditioner and the lights had done that?

   \*    \*    \*    \*    \*    \*

"A. \* \* \* I think were taken off in the selling space and fitting rooms and I recall that there was some exposed duct work laying on top of the \* \* \* when you look out into the street, on the left side of the store are fixtures. They were taking this duct work off, I remember it was Wednesday and there was a lot of dust on account of it, and I'm not completely sure whether the unit in the back room was completely disassembled or not on Wednesday.

   \*    \*    \*    \*    \*    \*

"A. To the best of my knowledge they were still working on it on Thursday.

"Q. And that was whoever you had authorized to do that removal?

"A. Yes.

"Q. That was done under your instructions and guidance?

"A. I sold this particular unit in a package deal with all the fixtures to this fellow, Lebowitz, and he, in turn, sold it to the man who took it out.

"Q. You had authority, though, to sell that and to handle that matter?

"A. Yes.

"Q. You were authorized to do that and when you left the key was with Mrs. Sharp?

"A. Yes.

"Q. And you left it with her?

"A. Yes."

Mrs. Sharp, local manager, testified to the effect that she was in the store on March 31, and that she was downtown on the following Friday, which was April 1st, and she went into the store and looked around.

"Q. Were the light fixtures in the store show room missing at what time?

"A. If I recall right, they were down in the center of the store.

\* \* \* \* \* \*

"Q. Now, was there someone working on the \* \* \* removing the air-conditioning equipment on Thursday and Friday both?

"A. Friday when I went by there was a boy in the back working \* \* \* taking loose some of the parts of the air-conditioner.

\* \* \* \* \* \*

"Q. Mrs. Sharp, when Mr. Katz left here, did you have the keys to the building? Who did he leave the keys with?

"A. I had them.

"Q. You had the keys to the building and in completing the moving there, anyone going in and out of there doing that, you either lent them the keys or else you opened for them or what did you do with the keys?

"A. Well, the last day that I worked I was still employed by Mangels and the last day, when I left that day, well I gave them to Mr. Mooney.

\* \* \* \* \* \*

"Q. You gave them to Mr. Mooney. Who is Mr. Mooney?

"A. Well, he was the man that was taking the air-conditioner out."

As stated above, Whitworth testified as to the condition of the building at the beginning of the lease, and said it was in good condition. The lease provided that the building was in good condition and would remain in good condition, and that lessee accepted same in good condition. In Pioneer Trust & Savings Bank v. Western Tire Auto Stores, 325 Ill.App. 575, 60 N.E. 2d 280, we find this statement of the Rule:

"Where lease provided that premises should be surrendered at its termination in same condition of repair as at the date of execution of lease, and provided that its signing by lessee should be conclusive evidence that lessee received premises in good order and repair, lessee could not complain of judgment awarding damages to lessor for surrendering premises in damaged condition in violation of lease on ground that there was no evidence as to state of repair at beginning of lease."

See also Edwards v. Ollen Rest. Corp., 198 Misc. 853, 98 N.Y.S.2d 815; 198 Misc. 858, 103 N.Y.S.2d 512; Pocono Pines Asy. Hotels Co. v. United States (1930) 69 Ct.Cl. 91; Powell v. John E. Hughes Orphanage, 148 Va. 331, 138 S.E. 637; Ghisalberti v. Lagarde, La.App., 146 So. 763, pt. 9; Ryan v. Boston Housing Authority, 322 Mass. 299, 77 N.E.2d 399, points 3–7. It is true that in this case the Court did hold that the premises were damaged subsequent to the expiration of the lease, but such holding is immaterial because the record is without dispute that the tenant had the right to remove the property that

he placed in the building, and the record is without dispute that the tenant, through its agent, sold the property that it claimed it put into the building, and that it permitted Lebowitz and the party to whom it sold the property to remove the same from the building. Katz said Lebowitz removed his property prior to about the time the lease expired, but that Lebowitz sold the air-conditioning unit to Mooney, and Mooney started to remove his property with Katz's permission and completed the removal after the lease expired. The evidence is without dispute that the parties to whom Katz had permitted to go into the building kept the keys until demand was made for them by Whitworth, and that Whitworth's agent, Ancel Greene, received the keys some ten days after the lease expired. Neither Katz nor the local agent made any attempt to deliver the keys to the building or surrender the building to the landlord, and when the landlord did get the keys and possession of the building he found that the building had been damaged as herein detailed. The fact that Whitworth made no complaint to the appellee about the tenant actually holding over and removing the property that they claimed to have placed in the building is of no significance, because the landlord recognized that under the lease the tenant had a reasonable time to have the improvements removed from the building, but this did not relieve the tenant of the obligation, under the terms of the lease, to see that the building was surrendered to the landlord in as good condition as it was at the time it was rented, reasonable wear and tear excepted. The Court did find that the building had been damaged, but failed to find the amount of the damages. The damaged condition was detailed to the Court by Whitworth, Hinds, Fisher and the pictures of the premises. It was also admitted in part by defendant witness, Mc-Glasson, who was called to testify only to a part of the damages claimed. Thus far we have discussed the pertinent terms of the lease, the pleadings and testimony relative to the lease and have found that the landlord made out a prima facie case against the tenant. The next question that presents itself is: What is the proper measure of damages under the pleadings and under the lease contract? We think it is the cost of repairs. The lease provided that the lessee would have the right to remove all the property that it placed in the building provided that it was not "in default in the payment of the rent and provided lessee shall pay all damage to said building resulting from said removal." Going back to the pleadings, plaintiffs pleaded damages based upon the reasonable cost of repairs to restore the building, and evidence was introduced to substantiate such pleading. As above stated, defendant went to trial on a general denial. There was no special exception to plaintiffs' pleadings. "In absence of special exceptions, petition will be liberally construed in pleader's favor and to support the judgment." Scott v. Gardner et al., 137 Tex. 628, 156 S.W.2d 513, 141 A.L.R. 50, points 1-2. We think the situation here is similar to the question presented in Hill & Hill Truck Line, Inc., v. Powell, Tex.Civ.App., 319 S.W.2d 128, (n. w. h.). There we held that the measure of damages was the reasonable cost of repairs to place the building in usable condition and grounded our decision on the rule announced by the Supreme Court in Pasadena State Bank v. Isaac, 149 Tex. 47, 228 S.W.2d 127. See also Glickman v. De Berry, Tex.Civ.App., 11 S.W.2d 367, (n. w. h.); Curry v. Texas Company, Tex.Civ.App., 18 S.W.2d 256, point page 260 (w. dis.). We are of the further view that the Court's Conclusions of Law based upon his Findings of Fact heretofore discussed, are erroneous. See Gulf Pipe Line Co. v. Watson, Tex.Civ.App., 8 S.W.2d 957, point 5, (n. w. h.); Houston & T. C. Ry. v. Buchanan, 38 Tex.Civ.App. 165, 84 S.W. 1073; Sydney Webb & Co. v. Daggett, 39 Tex.Civ.App. 390, 87 S.W. 743, (w. ref.).

Points 4, 5, 6 and 7 are to the effect: (4) That the Court erred in rendering judgment for defendant on its first

Finding of Fact that the condition of the premises had not been proved when entered by defendant, because such finding has no support in the evidence and is contrary to the pleadings, the evidence tendered, and to a proper construction of the contract, and that such finding is so against the overwhelming and undisputed weight of the evidence as to be clearly and manifestly wrong, and it is further inconsistent with its 4th Finding, and is an improper measure of damages and constitutes fundamental error; (5) That the judgment rendered for defendant on the Court's 2nd Finding which was to the effect that the damages did not occur prior to the expiration of the lease, and his 3rd Finding that defendant did not hold over beyond the lease because these findings are not supported by and are contrary to the pleadings, the evidence introduced, and proper construction of the pleadings and contract, and is clearly and manifestly wrong and has no basis for any purpose here; (6) That the Court erred in failing to enter judgment for plaintiffs, because under the Court's 4th Finding that the premises were damaged is a material finding in favor of plaintiffs and is the basis of this suit, and that such finding will support judgment on a proper legal measure of damages as pleaded and proved by the evidence, and failure to do so constitutes and is fundamental error; (7) That the Court erred in rendering judgment for defendant on his 5th Finding of Fact wherein the Court held that plaintiffs did not prove that damages occurred prior to delivery of the keys to plaintiff, because such finding is not supported by and is contrary to the pleadings and terms of contract, and is against the undisputed evidence and is clearly and manifestly wrong. We sustain these points. The evidence is without dispute that the building was in good condition, suitable for the purpose of the lease; that it had electrical wiring, lights, doors and equipment, and the building was in that same condition when the tenant moved in. It will be recalled that the lease stated: *"The lessee accepts such premises as suitable for the purposes which same are leased."* At all times during this long lease tenant had the right of exclusive possession and enjoyment, and it provided that at the end of the term that tenant would peaceably surrender the leased premises in good condition as when entered. It is clear that under the terms of the lease the lessee had the full enjoyment and control of the building until he yielded it to the landlord under the terms of the lease. Certainly the landlord did not have the right and could not make an appraisal of the damages he sustained to his building until after the tenant had exercised its right to remove its property from the building, and to remove the fixtures it had placed in the building under the terms of the contract. The Court did find in its 4th Finding that the building had been damaged, but in the 5th Finding wherein he found that plaintiffs did not prove the damages occurred prior to delivery of the keys to plaintiff, is, we think, without any support, and in all events is contrary to the great weight and preponderance of the evidence, and is manifestly wrong.

After a careful review of this record we think the Court has given an incorrect construction to the terms and conditions of the lease contract. As we understand the Findings of Fact and Conclusions of Law he was of the view that the responsibilities of the lessee, under this record, terminated on March 31, 1960, that being the date that the lease terminated. That finding and conclusion would have been true if the tenant had vacated the premises and removed its property, and had tendered to the landlord the building in the condition it was in, reasonable wear and tear excepted, at the time the lease began, which the tenant failed to do. We have previously detailed all the tenant did. It removed its property, it sold its fixtures and turned the keys over to the parties it sold the fixtures to and permitted the fixtures to be removed, and during this ten day period the building was damaged while it was in the legal possession of the tenant, because it had not returned the building to the landlord under the expressed terms and provisions of the lease. Certain-

ly the tenant could not (and did not) discharge his duty under the terms of the lease until he had surrendered the building to the landlord in the condition the building was in when he received it, reasonable wear and tear excepted, and this he did not do. Accordingly, Points 4, 5, 6 and 7 are sustained.

Point 8 is to the effect that the Court erred in rendering judgment for the lessee on its 5th Finding that plaintiffs did not prove the damages occurred prior to delivery of the key to plaintiffs, because same is not supported by and was contrary to the pleadings, evidence and the terms of the contract, and so against the overwhelming undisputed evidence so as to be clearly and manifestly wrong. We sustain this point.

■■■ We have carefully considered this record, the Findings of Fact and Conclusions of Law, and it is our view that the Findings of Fact are contrary to the undisputed factual situation here developed, save and except that part of finding 4 wherein the Court found that the premises were damaged. That part of the finding that the building was damaged is sustained by the undisputed evidence; that part of the finding that the damage occurred subsequent to the expiration of the lease is immaterial, and in effect is in open and irreconcilable conflict with the record because the evidence is without dispute that the damage occurred to the building while it was in the legal possession of the tenant, because the tenant's agent permitted the people to whom the property was sold to go into the building and remove these fixtures, and when the landlord actually gained possession of the building he found that the building had been damaged, and we are of the view that the record shows that the building was damaged while it was in the legal possession of the tenant because it had not fulfilled its contract and delivered possession of the building to the landlord under the terms and provisions of the contract, and that these fixtures were removed and the damage done to the building before the keys and posses-

sion were delivered to the landlord. There is no contention by the landlord that the tenant held over, but that the tenant merely exercised a reasonable time in which to remove its goods and wares, and sell and/or remove the fixtures in the exercise of its right, but that the tenant permitted the building to be damaged while it was in its legal possession and before the building was surrendered to the landlord. That leads us to say that the findings of the trial court, except where it found that the building was damaged, is so against the great weight and preponderance of the evidence as to be manifestly wrong. Since we have a statement of facts the findings of the trial court are not binding on us. See Swanson v. Swanson, 148 Tex. 600, 228 S.W.2d 156, (Sp.Ct.). The findings of the trial court, except wherein the court found that the building was damaged, are hereby set aside, and held for naught in their entirety. The Conclusions of Law filed by the Court are necessarily in error, and they are set aside.

We have given much consideration to the question of whether under the record the rule stated in Cochran v. Wool Growers, 140 Tex. 184, 166 S.W.2d 904, points 9–10, we have authority to reverse and render this cause on the measure of damages shown by the testimony; (See also Springfield Fire & Marine Ins. Co. v. Wm. Cameron, Tex. Civ.App., 96 S.W.2d 788, (W. ref.), opinion by Justice Alexander) but since the Court failed to find the amount of damages, we have decided that justice would best be served by a reversal and remand of this cause. The majority are also of the view that the trial court tried this cause on an erroneous theory, and that justice will be best served by a reversal and remand of the same. See City of Houston v. Bullard, Tex. Civ.App., 354 S.W.2d 224; also Pioneer Trust & Savings Bank v. Western Tire Auto Stores, 325 Ill.App. 575, 60 N.E.2d 280, supra. Since the majority are of the view that the cause must be reversed and remanded, and since we have held that the trial court tried the cause on the wrong theory under the terms of the lease contract,

the other questions presented should not arise again.

Accordingly, the cause is reversed and remanded in order that the cause may be retried according to the views herein expressed. All costs of appeal are taxed against appellee.

WILSON, J., dissents.