**BAROID DIVISION, NATIONAL LEAD COMPANY, Appellant,**

**v.**

**J. E. EARLY, Appellee.**

**No. 3958.**

Court of Civil Appeals of Texas.

Eastland.

April 30, 1965.

W. H. Fogleman, Jr., Houston, for appellant.

H. M. Hood, Borger, for appellee.

COLLINGS, Justice.

J. E. Early, the owner of a building in Stinnett, Texas, brought suit against Ba-

roid Division, National Lead Company, and Bo Mud Company for damages alleged to have been sustained to the floor of plaintiff's building while occupied by appellants under an oral lease contract. The trial was before the court without a jury and judgment was rendered against the defendants, jointly and severally in the sum of $1235.79. Baroid Division, National Lead Company has appealed.

It is undisputed that in 1959, appellee Early by oral agreement leased the building in question to Bo Mud Company for a rental of $30.00 per month which was subsequently raised to $45.00 per month, and that the lease was terminable at any time on thirty days notice. Appellant, Baroid Division, National Lead Company, is the successor to Bo Mud Company. The dimensions of the building in question are 24 feet wide and 64 feet in length. There was evidence to the effect that the lease agreement contemplated that the building was to be used by appellant for office purposes and also for storage. Appellee testified, in effect, that the building was to be used for office purposes and for light storage and he also stated that he told the representative of Bo Mud at the time of the lease agreement that he didn't care what they used the building for, but didn't want them to break the floor. He stated that he knew they were in the mud business but didn't know about all the details of what they stored or used. He testified in effect that under the lease agreement the lessee was to keep the floor repaired, and that as long as their employee Vandergriff was there the agreement was complied with. Mr. Vandergriff also testified that Early told Bo Mud's representative at the time of the lease agreement that they could use the building for whatever they wanted to so long as they took care of the floor, and that while he, Vandergriff, was in charge of the premises he did take good care of and kept the floor in good repair. Appellee's contention is that the gist of the lease agreement between the parties was that Bo Mud, appellant's predecessor,

specifically agreed that it would take care of the floor regardless of what it used the building for and would keep the floor in good repair.

█ Appellant's contention concerning the terms of the lease is that the oral lease agreement contemplated use of the premises for office purposes with specific authority to also use the building for storage of any character. Appellant presents points urging that (1) there was no competent evidence to refute appellant-lessee's contention that the premises were at all times used for the very purposes for which they were leased by appellant; (2) that the court erred in failing to take into proper account the age of the building and its generally rundown condition at the time the oral lease commenced and (3) that there was no competent evidence to refute appellant's contention that the worsened condition of the floor was the result of normal wear and tear and action of the elements. Although the building was old at the time of the oral lease it is not true, as appellant apparently contends that the floor was then in a generally rundown and delapidated condition. The evidence shows that the floor was replaced and improved in 1951 or 1952 and supports the conclusion that it was in good condition at the time of the lease. The evidence also shows that the parties agreed that the lessee was to take care of the floor and keep it in good repair. It is undisputed that the floor sustained considerable injury while the building was occupied by appellant in that many of the sills were broken and resting on the ground when appellant moved out; that the floor was in a mashed-in delapidated and uneven condition with "sunken places" and all "crooked up" and was curved up and cracked; that the floor was in such a damaged condition that appellant demanded that Early repair it, but Early refused. Appellant then gave Early thirty days notice and moved out.

█ In our opinion appellant was liable for the damages sustained to the floor be-

cause the agreement was, in effect, that the lessee would keep the floor in good repair, and there is ample evidence showing that the agreement was not complied with. The extent and nature of the damage as shown by the evidence is such that it cannot be held as a matter of law that "the worsened condition of the floor was the result of normal wear and tear." Although Early did agree for the lessee to use the building for storage purposes without any specific limitation, his agreement was made with the condition that the lessee would not "break up" the floor and would take care of the floor and keep it up. Appellant's points urging in effect that it was not liable for the damages sustained to the floor are overruled.

In appellant's 4th point he complains of the finding on damages, contending that the court erred in basing its calculations of damages on the cost of installing a new hardwood floor. The evidence shows that the floor which was in the building at the beginning of the lease contract was a good floor with 2 x 8's for sills, a subfloor of used flooring and a top floor of new material and most of it hardwood. There was evidence to the effect that during appellant's occupancy of the building the floor was badly damaged, that it had settled away from the building on both sides, that the damaged portion applied to about ¾ths of the entire building, that the floor was so low on the ground that it was impractical if not impossible to repair it without taking up the entire damaged area; that you couldn't get under the floor to do any repair at all. Mr. Max Brown, who testified that he was experienced in such type of repair work, stated that the most practical way to repair the floor was to start in the middle and tear it out as far as was needed to replace the joists, and to come back with a subfloor and a hardwood floor on top. Mr. Brown estimated the cost of repairing the floor in this manner, and such estimate is the basis of the court's calculation of the damage suffered by appellee.

In arriving at the amount of damages suffered by appellee it is indicated that the court considered the fact that about 16 feet of the building, or approximately ¼th of its length, was set aside for office purposes and that such portion was not damaged beyond that occasioned by customary wear and tear. The court therefore deducted ¼th of the cost of repairing the entire floor, which the court found was $2353.88, calculating that ¼th of such total amount was $588.47, which would leave $1765.41. The court estimated that considering the character of the floor which had been in the building over a period of 11 or 12 years, that there would be a depreciation of about 30% in value, which would reduce the amount of damages by $529.62, which was deducted from the figure of $1765.41 leaving a balance of $1235.79. Based upon this calculation the court found that the amount of damages which appellee Early was entitled to recover was $1235.79. In the case of Whitworth Estate v. Mangels of Texas, Inc., Tex.Civ.App., 363 S.W.2d 851 it was held that where a lessee covenanted to return property at the end of the lease in as good condition as when received, ordinary wear and tear excepted, the proper measure of damages was the reasonable cost of repairs necessary to place the building in such good condition. In the instant case the evidence supports the conclusion that appellant leased the building with the understanding that the floor would be kept in good repair. In our opinion the measure of damages here applicable is the same as in the case above cited. The court made proper allowance for the relatively undamaged portions of the floor in question. The amount of damages found by the court is fair and reasonable and is amply supported by the evidence.

The judgment is affirmed.