Howard M. SIEGLER, M.D. et al., Appellants,

v.

Ash ROBINSON, Independent Executor of the Estate of Joan Robinson Hill, Deceased, Appellee.

No. 17526.

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 27, 1980.

Rehearing Denied June 26, 1980.

Butler, Binion, Rice, Cook & Knapp, Robert C. Floyd, Houston, for appellants.

Jimmy D. Ashley and William S. Frank, Houston, for appellee.

Before COLEMAN, C. J., and DOYLE and WALLACE, JJ.

DOYLE, Justice.

Lessor, Ash Robinson, brought this suit against lessees, Howard M. Siegler, M.D., his wife, Antoinette Andrau Siegler, and

Cyandy Stables, Inc., for past due rentals, insurance premiums and taxes due under a rental agreement, and for money damages for cost of repairs to the leased premises and improvements. The Sieglers counterclaimed for specific performance of a right of first refusal on the property. Robinson sought and was granted an instructed verdict for the past due rentals, taxes and insurance premiums, together with prejudgment interest. The court found that as a matter of law the Sieglers' counterclaim was barred by the termination of the lease pursuant to a writ of restitution awarded to Robinson in December 1974, and ordered that the Sieglers take nothing on their counterclaim. Trial was to a jury which found that the Sieglers failed to return the property in as good order and condition, natural deterioration and damage by the elements excepted, as when they received it. The jury further found a reasonable cost to restore the premises to the condition when originally received was $25,000.00. The court entered judgment on the instructed verdict and the jury findings and the Sieglers brought this appeal.

We affirm.

Evidence adduced at the trial showed that in 1969 Robinson and the Sieglers entered into a lease agreement for a period of 10 years, whereby the Sieglers leased a stable and horse show facility know as Chatsworth Farms. The property in question belonged to the estate of Ash Robinson's deceased daughter, Joan Robinson Hill. The Sieglers agreed to pay a monthly rental and also to properly maintain the premises. Relevant portions of the lease are as follows:

2nd. That the Lessee shall take good care of the property and its fixtures, and suffer no waste; . . and at the end or other expiration of the term shall deliver up the demised premises in good order and condition, natural deterioration and damage by fire and the elements only excepted . . .

4th. That the Lessee shall not assign this agreement or underlet the premises, or any part thereof . . without the consent of the Lessor in writing . . .

6th. That in case of default in any of the covenants herein, Lessor may enforce the performance of this lease in any modes provided by law and this lease may be forfeited at Lessor's discretion if such default continue for a period of ten days after lessor notifies said Lessee of such default and his intention to declare the lease forfeited, . . . this lease shall cease and come to an end as if that were the day originally fixed herein for the expiration of the term hereof . . . and without prejudice to any remedies for arrears of rent or breach of covenant, . . .

12th. Lessee agrees to keep the improvements insured . . . Lessee to pay the insurance premiums.

13th. . . . Lessee will pay the taxes on the property.

15th. Should the property be offered for sale Lessee shall have the right to purchase said property by meeting the best offer received by lessor for the property.

After taking possession of the property the Sieglers defaulted on the rental agreement by subletting the property without Robinson's consent; by failing to pay rent, taxes and insurance premiums; and by improperly maintaining the premises. In 1974 Robinson instituted suit to regain possession pursuant to the lease agreement. The parties entered into an agreed judgment of restitution and the property was returned to Robinson. Subsequently this suit was brought to recover damages for the above enumerated breaches as provided in the lease.

The Sieglers bring six points of error, the first of which contends that the court erred in overruling their motion for continuance. They argue they are entitled to specific performance of a contract to sell the property and that since Robinson conveyed the

property to a third party just prior to trial, they are entitled to a continuance in order to bring this new indispensable party into the litigation, citing as authority *Banco Minero v. Ross & Masterson,* 138 S.W. 224 (Tex.Civ.App.-San Antonio 1911, aff'd 106 Tex. 522, 172 S.W. 711 (1915); 1 R. McDonald, Texas Civil Practice § 3.28.4 p. 322 (1965).

■ Robinson's grantee is not an indispensable party in the case before us. The only parties involved in this litigation are Ash Robinson, the Sieglers and Cyandy Stables, Inc. The cause of action in the instant case is based on a lease agreement and does not involve the sale or transfer of the actual real property. In 1974, the Sieglers forfeited their rights under the lease agreement and returned the property to Robinson. With the termination of the lease, the Sieglers lost all rights pertaining thereto. *Stone v. Tigner,* 165 S.W.2d 124 (Tex.Civ. App.-Galveston 1942, writ ref'd). As discussed in the *Stone* case, an option to purchase property continues as long as the lessee fulfills his obligations under the lease agreement. The fulfillment of these obligations generally constitutes the consideration for performance of the option, unless the option itself provides consideration, in which case it may survive the termination of the lease.

■ In the instant case, the right of refusal is not really an option, nor does this clause contain consideration for its survival independent of the lease. If this right depends on the existence of the lease, then the right was necessarily lost when the Sieglers defaulted on their obligations under the lease, and the lease was terminated. Therefore the Sieglers were not entitled to specific performance of any right to purchase the subject property as a matter of law. Hence the new owners of the property were not necessary parties to this litigation. The Sieglers have failed to show the trial court abused its discretion in denying their sixth motion for continuance. *Southwestern Bell Telephone Company v. Griffith,* 575 S.W.2d 92 (Tex.Civ.App.-Corpus Christi 1978, writ ref'd n. r. e.).

By their second, third and fourth points of error, the Sieglers complain of the factual insufficiency of the evidence to sustain the jury's finding that they failed to return the premises in as good order and condition, natural deterioration and damages by the elements only excepted, as when they first took possession. They also assert that the jury's findings were against the great weight and preponderance of the evidence.

■ This court, in reviewing the entire record of the case, finds that thirteen witnesses testified in this trial giving approximately 1200 pages of testimony. Numerous photographs were also introduced into evidence showing the premises before and after the Sieglers had leased it. Several witnesses and Robinson testified that before the Sieglers leased the property in 1969, it was idyllic, but when Robinson regained possession of it in 1974, it had not been properly maintained. Witnesses also testified that the Sieglers were attempting to repair and restore the property at the time the lease was terminated. As the trier of fact, the jury was entitled to believe or disbelieve the testimony adduced. There was ample evidence upon which the jury could base its verdict. These points of error are overruled.

■ By the fifth and sixth points of error the Sieglers allege that the trial court erred in applying the wrong measure of damages. They contend that the correct measure should have been injury to reversion and difference in market value before and after injury, instead of the reasonable cost of repairs.

The Sieglers cite several cases for the contention that when a landlord sues his tenant for injury to the premises before the expiration of the term of the lease, where the repairs have not been actually made, the proper measure of damages is not what it would be worth to restore the premises to their former state, but rather the injury to the market value of the reversion. *Fagan v. Whitcomb,* 14 S.W. 1018 (Tex.Civ.App.-1889, no writ); *Glickman v. DeBerry* 11 S.W.2d 367 (Tex.Civ.App.-Austin 1928, no

# 386

writ). However, in the case before us where there are no permanent injuries to the premises, the landlord is entitled to the reasonable cost of repairs as the proper measure of damages if he waits until after the term of the lease has expired. *Whitworth Estate v. Mangels of Texas, Inc.*, 363 S.W.2d 851 (Tex.Civ.App.-Waco 1962, no writ). See also *Baroid Division, National Lead Company v. Early*, 390 S.W.2d 866 (Tex.Civ.App.-Eastland 1965, no writ).

While the Sieglers argue that Robinson aborted this lease agreement before they could make repairs, the lease agreement clearly stated that in the event lessees defaulted on any covenants contained in this lease, lessor may terminate the lease as if that were the day originally fixed therein for the expiration of the term. In 1974 when Robinson instituted suit to regain possession of this land, the Sieglers entered into an agreed judgment restoring the land to Robinson. Thus, Robinson sued after the term of the lease and was entitled to damages for the reasonable cost of repairs. *Whitworth Estate v. Mangels of Texas, Inc.*, supra. The Sieglers fifth and sixth points of error are overruled.

The judgment of the trial court is affirmed.