Carl B. DUNLAP, Appellant,

v.

**MARS PLUMBING SUPPLY CO.,**
Appellee.

No. 15244.

Court of Civil Appeals of Texas,
San Antonio.

Dec. 26, 1973.

David L. Hooper, Abilene, for appellant.
Wolff & Wolff, San Antonio, for appellee.

BARROW, Chief Justice.

Appellant has perfected his appeal from a judgment in the sum of $9,000, entered after a nonjury trial in appellee's suit to recover rental payments due under a written lease agreement, and for damages to the leased premises. Findings of fact and conclusions of law were filed wherein the trial court found that $4,200 was due appellee for unpaid rental, and $4,800 was owed for damages to the premises.

Appellant asserts three assignments of error, all of which relate to the award for damages to the premises. Appellant and appellee entered into a written lease agreement whereby appellant leased certain premises in San Antonio for a term of five years from March 1, 1967, for the sum of $650 per month, with any holding-over to be on a month-to-month basis at $1,300 per month. The premises were not surrendered until August 31, 1972, and appellant does not now question that $4,200 rental is due appellee under the terms of the lease.[1]

The agreement provides in part that all fixtures alterations, additions and improvements (except trade fixtures) put in at the expense of appellant would become the property of appellee and be surrendered with the premises as a part thereof at the termination of the lease. Appellant also covenanted to keep the premises in good repair, and to deliver the premises to appellee at the end of the term in good order and condition, reasonable wear and tear excepted. It is undisputed that before the surrender of the premises to appellee, the air-conditioning duct work, ceiling tile, wall panels and doors were removed from the premises. Appellee sought damages for the removal of such items and the damage thereby caused to the premises. The trial court, after finding such damaged condition, found that the reasonable cost to repair same on August 31, 1972, was $4,800. The court further found that the difference in market value on August 31, 1972, immediately before and immediately after such damage was $4,800.

Appellant asserts by his first point that such findings are erroneous and in conflict with other findings of the court. Under this point it is urged that the damage findings as of August 31, 1972, are in conflict with a supplemental finding by the court that the items were removed from the premises in November, 1971. Appellant, therefore, asserts that there is no evidence of the reasonable market value of the premises immediately before the premises were surrendered on August 31, 1972. Such argument overlooks appellant's covenant in the written lease to surrender such improvements to appellee at the expiration of the lease in good order and condition, ordinary wear and tear excepted.

It is settled that where the tenant fails to discharge his obligation to return the property in good condition, the landlord may recover as the measure of damages the reasonable cost of repairs to place the property in the obligated condition. Baroid Division, National Lead Co. v. Early, 390 S.W.2d 866 (Tex.Civ.App.—Eastland 1965, no writ); J. L. Whitworth Estate v. Mangels of Texas, Inc., 363 S.W.2d 851 (Tex. Civ.App.—Waco 1963, no writ); 35 Tex. Jur.2d, Landlord & Tenant, Section 102. Appellant's obligation arose on August 31,

1. Appellant signed the lease individually and d/b/a Dunlap Sales and Service. A few months later, he incorporated under the name of Dunlap Sales and Service, Inc. This corporation later merged with Artko Corporation and continued to operate the business as Dunlap Service, Inc. Appellant continued in this organization until he resigned in April, 1972. In August, 1972, he formed Mikelco, Inc. Appellant contended in the trial court that he was not responsible for the unpaid rent or for the damages caused by the removal of the property because of this change of ownership. It was not shown that appellee released appellant from his liability on the lease agreement, and appellant does not assert any such defense on this appeal.

1972, when the premises were surrendered to appellee; and, therefore, it is immaterial when the items were actually removed from the premises.

 There was testimony from Mr. Sam Rosenstein, the president of appellee, as well as from Mr. Charles Madden, a general contractor, that they inspected the premises shortly after same were surrendered to appellee, and that the items sued upon herein had been removed. Mr. Madden testified that the reasonable cost of repairing the damage caused by such removal was $4,980, including the sum of $160.50 necessary to replace 107 broken windows. Since the trial court only allowed a recovery of $4,800, it is immaterial that Mr. Rosenstein could not testify that all of the windows were broken at the time the premises were surrendered to him. Appellant's first point is without merit and overruled.

 The trial court also found that the difference in market value of the property on August 31, 1972, immediately before such items were damaged and immediately after such damage was $4,800. Appellant's third point urges that the trial court erred in admitting the testimony of Mr. Madden in support of this measure of damages, in that he was not qualified to so testify. The qualifications of Mr. Madden to testify regarding the reasonable market value of the premises immediately before the damage are very meager in that he had only seen the property once, and he admitted that he was not a real estate expert. Nevertheless, any error in the admission of this testimony would be harmless. Although appellee made only a general allegation of damages, the thrust of its proof relates to the reasonable cost of repairs. As pointed out heretofore, this is a valid measure of damages, and the sum of $4,800 is fully supported in the record. The trial court's finding of $4,800 difference in market value is consistent with the finding of the cost of repairs. The judgment is fully supported by the finding of the cost of repairs; and, therefore, any error in the admission of testimony of market value is harmless. Rule 434, Texas Rules of Civil Procedure.

 Appellant's final point of error relates to the admission of five photographs made shortly before the trial in March of 1973, which portray various views of the property, and particularly the damaged parts thereof. Mr. Rosenstein testified that said photographs fairly reflect the condition of the property shortly after it was surrendered to appellee. With this foundation, the trial court properly admitted said photographs. Dallas Ry. & Terminal Co. v. Durkee, 193 S.W.2d 222 (Tex.Civ.App.—Dallas 1946, writ ref'd n. r. e.); 2 McCormick & Ray, Texas Law of Evidence, Section 1465. It is true that on cross-examination, Mr. Rosenstein admitted that he was not sure if a broken window shown in one photograph was broken on August 31, 1972. Nevertheless, appellant did not subsequently move to strike this or any of the other photographs. As pointed out heretofore, the damage finding of the trial court apparently eliminated any claim for broken windows. Mr. Rosenstein's qualification to his prior testimony that the photographs reflected the condition on August 31, 1972, would only go to the weight to be given said photographs. The trial court did not err in admitting the five pictures in that the condition of the premises was relevant to the issues in controversy. The pictures probably did not contribute much to the trial, in that they are all of very poor quality. This point does not demonstrate reversible error and is overruled.

The judgment of the trial court is affirmed.