Jesse FLORES, Appellant,

v.

Michael RIZIK, Appellee.

No. 04–83–00270–CV.

Court of Appeals of Texas,
San Antonio.

Dec. 19, 1984.

**114**

Wallace Henderson, San Antonio, for appellant.

William R. Lozano, San Antonio, for appellee.

BUTTS, REEVES and TIJERINA, JJ.

## OPINION

REEVES, Justice.

Lessee of a restaurant, Jesse Flores, appeals from a bench trial wherein judgment was awarded Michael Rizik, lessor, $9,000.00 for arrearage of rent and damages to the leasehold.

Flores asserts four points of error. In points of error one and two, he questions the legal and factual sufficiency of the evidence to support liability for the amount of the judgment. In point of error number three, Flores asserts that the trial court erred in finding damages for removal of trade fixtures as there was no evidence as to the amount of damages done to the building from such removal. In point of error number four, Flores contends that the trial court erred in finding damages for Rizik as there was no evidence as to any costs of replacement of missing personalty, costs of repair to realty, nor diminution in value of realty caused by Flores.

■ In passing on the legal sufficiency or "no evidence" points of error, we consider only the evidence and the inferences tending to support the findings and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965).

■ In passing on the factual sufficiency of the evidence, we examine all the evidence, both pro and con, and reverse and remand for a new trial if we conclude that the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

In 1970, Flores and Rizik entered into a one-year written lease of a building to be used as a restaurant. The agreement included lease of various cooking equipment. The parties agree that at the commencement of the lease the building and equipment were in excellent condition. The lease expired and the tenancy became one of month-to-month.

In 1981, Flores was behind in his rent payments. After Rizik commenced a forcible entry and detainer action against him, Flores moved from the premises. Flores testified he vacated the premises on October 31, 1981, not because of the forcible entry and detainer action, but because the restaurant was in a state of disrepair, Rizik would not make needed repairs, and Flores was afraid the health department would close the facility. Upon departure, testified Flores, he swept the floors and locked the doors. However, he did not turn the keys over to Rizik. Rizik testified that Flores did not give any notification of vacating the premises but when Rizik inspected the restaurant sometime in November, he found it vacant. Rizik testified that, at that time, the doors to the restaurant were unlocked and "it was a filthy pig sty." Pictures introduced into evidence confirm this description as does the testimony of George Cadena, Rizik's property manager, and witness Glenn Porter, who supervised repairs at the restaurant.

This evidence shows the following damages to the establishment: several broken windows, a kitchen sink torn from a wall, a basin and commode removed from a bathroom, fluorescent lights pulled out and hanging by wires, wires hanging where light fixtures were removed, acoustical ceiling tiles missing, a Vent-a-Hood broken and unusable, a hole in the roof where the flue of a barbecue pit (purchased and installed by Flores) had been placed, damage to a wall near the pit, coils of a walk-in cooler and freezer pulled out, damage to cooling units on the roof, and a neon sign stripped of lettering and mechanisms. The premis-

es were littered with empty beer cans and other trash. Several walls were covered with layers of grease.

A number of items of personalty were missing from the restaurant: pots and pans, stainless steel cooking utensils, a meat slicer, a flour mixer, a meat grinder, a cash register, a tamale machine, a tortilla machine and a deep fryer. The stove was still in the restaurant but was broken. Rizik testified that he had paid $15,000 for the items in 1968. He further testified that the replacement value of the items when Flores moved out, deducting for wear and tear over the years of use, was $2,500.

Flores asserts that all of the above items "wore out." He testified that during his occupancy, the cash register wore out and he "threw it" in the back room of the establishment. Likewise, he "junked" the grinder because it did not operate. As to the tamale machine, Flores said, "Those things will not last forever." Flores maintains he reported on two occasions to Rizik that certain items were not functioning and Rizik responded, "Well, you fix it, you maintain it. The rent is cheap enough." Rizik testified that many of the items were stainless steel and would not wear out and that several of the machines were hand operated and could be repaired to keep them in working order.

■ Flores is correct in his contention that Rizik did not prove market value or the nonexistence of a market value for the personalty at the time of the termination of the lease. The general rule for measuring damages to personalty is the difference in market value immediately before and after injury or loss. Only if the items do not have a market value is replacement value the proper measure. *Smith v. Dye*, 294 S.W.2d 452, 465 (Tex.Civ.App.—Galveston 1956, no writ). Rizik's testimony is insufficient to support an award of damages for the missing personalty. Recovery of damages based on a different measure is not allowed absent proof that the usual standard of reduced market value is inappropriate. *Moran Corp. v. Murray*, 381 S.W.2d

324, 328 (Tex.Civ.App.—Texarkana 1964, no writ).

As there are no findings of fact or conclusions of law to peruse, we do not know if the judgment included any award for the missing personalty. The judgment will be affirmed if it can be sustained by evidence of other damages. *Seaman v. Seaman*, 425 S.W.2d 339, 341 (Tex.1968).

■ Rizik testified that the difference in the value of the building at the time it was delivered to Flores and at the time it was returned to Rizik, taking into consideration reasonable wear and tear, was $8,000 to $12,000; Rizik pled the amount of damage as $7,500. Contrary to Flores' contention, Rizik, as owner, was qualified to testify as to the market value of his property. *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984).

■ Flores objected to diminution in value as a measure of damages. We disagree. A proper measure in this case is the difference between the condition of the premises when leased and their condition at the expiration of the lease, ordinary wear and tear excepted. Ordinarily, damages are to be measured by the injuries sustained by the complaining party. *Nielson v. Okies*, 503 S.W.2d 614, 616 (Tex.Civ.App. —El Paso 1973, no writ); *Harrell v. F.H. Vahlsing, Inc.*, 248 S.W.2d 762, 771 (Tex. Civ.App.—San Antonio 1952, writ ref'd n.r. e.). When a tenant fails to discharge the obligation to return the property in good condition, the landlord *may* recover, as the measure of damages, the reasonable cost of repairs to place the property in the obligated condition. *Dunlap v. Mars Plumbing Supply Co.*, 504 S.W.2d 917 (Tex.Civ. App.—San Antonio 1973, no writ); *Siegler v. Robinson*, 600 S.W.2d 382 (Tex.Civ.App. —Houston [1st Dist.] 1980, writ ref'd n.r. e.). However, there is a tendency to award cost of repairs where the injury caused by the waste is easily repairable or the damage suffered is small and the cost of restoration readily ascertainable. *Nielson, supra*, at 616. The evidence establishes that such is not the nature of the damages sustained by the leasehold in this cause.

Rizik testified that cost of repairs to the building exceeded $18,000 but Rizik did not plead cost of repairs as damages. Under that measure, calculations as to the portion of the plumbing, electrical, painting, and other expenses attributable to acts of Flores would have been necessary. *See, e.g., Manges v. Willoughby,* 505 S.W.2d 379, 384–86 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.). Under the dimunition in value measure of damages, whether or not the landlord has even made repairs of injuries suffered is not of consequence in arriving at the amount of those injuries. *Nielson, supra,* at 616. Further, if the judgment is fully supported by implied findings of market value of the premises, any error in the admission of costs of repair is harmless. TEX.R.CIV.P. 434.

Flores makes the additional argument that as Rizik did not invoke the adverse witness rule when he called Flores as a witness, Rizik is bound by his testimony and can only recover for the specific items of damage that he, Flores, admitted. However, it was not necessary for Rizik to identify Flores as an adverse witness under TEX.R.CIV.P. 182. *Thompson v. Uzzell,* 541 S.W.2d 499, 502 (Tex.Civ.App.—Tyler 1976, no writ); *Pioneer Finance & Thrift Corp. v. Adams,* 426 S.W.2d 317, 321 (Tex. Civ.App.—Eastland 1968, writ ref'd n.r.e.).

Flores argues that most of the damages may have been inflicted by vandals after he vacated the premises and there is no proof he damaged the building. He testified that one of his biggest problems at the restaurant was with vandals and burglaries.

It is a basic proposition of the law of landlord and tenant that it is the duty of the tenant to exercise due care in the use of the leased premises and not to cause any material or permanent injury. This obligation is implied whether written into a lease contract or not. *Gulf Oil Corp. v. Horton,* 143 S.W.2d 132 (Tex.Civ.App.—Amarillo 1940, no writ).

Flores testified he continued the restaurant operation up until October 29, 1981, and when he left, the walk-in cooler and freezer, the air-conditioners, and the Vent-a-Hood were operative. However, at trial, he was shown a photograph of the damaged Vent-a-Hood and admitted it was in the depicted condition when he left. He testified that he took only the removable plastic bearing the name of his restaurant from the neon sign and left the rest of the sign in place.

A tenant vacating premises has a duty to notify the landlord of his departure. Until notification effecting a termination of the tenancy, the building remains in the legal possession of the tenant and the responsibility for damages to the leasehold accompanies the legal possession. *Whitworth Estate v. Mangels of Texas, Inc.,* 363 S.W.2d 851 (Tex.Civ.App.—Waco 1962, no writ). In this cause, Flores did not notify Rizik of his departure and he did not return the keys to the property to Rizik or his agents. He testified as to vandalism in the neighborhood. Thus he was aware of the risks to the building but took no steps to avoid liability.

As earlier related, Flores testified he did not vacate the premises because of the forcible entry and detainer action against him but because the property was in a state of disrepair. Yet, Flores testified to only two occasions on which he called Rizik as to repairs needed to certain kitchen equipment. There was no testimony of reporting to Rizik damages to ceiling tiles which Flores admits were missing at the time he vacated. Flores testified that he removed the sink and commode from a bathroom near the kitchen because of plumbing problems and put the fixtures behind the building. Yet, Rizik was not notified. Likewise, the wall by the barbecue pit was damaged. Rizik contends that this damage was caused by the removal of the barbecue pit which the parties agreed was located near the damaged wall, was of great weight and removed by Flores in sections. Flores testified that three or four years prior to his departure, a car driven by an unknown individual had hit the wall from the outside. Once again,

Rizik was not notified and the police were not called.

There is evidence, then, that needed repairs were not reported to Rizik. Yet, Flores complains that the premises were in disrepair. In the absence of findings of fact, we do not know what, if any, portion of Flores' testimony was given credence by the trial court.

The trial court may have attributed the wall damage to Flores, believing the damages occurred when the barbecue pit was removed, or believing Flores's version involving the car mishap but holding him responsible since the accident went unreported. The court may have concluded that damages not admitted by Flores resulted from his use instead of being the work of unknown and unproven vandals; or it may have held Flores responsible, vandals notwithstanding, under the duty a vacating tenant owes to a landlord. In the absence of findings of fact and conclusions of law, we do not know what damages, in what amount, and under what rationale, Flores was held responsible.

■ The trial court, as trier of fact, found damage to the leasehold of $6,700, assuming $1,300 of the judgment was attributable to rent arrearage admitted by Flores. The amount relating to damage to the leasehold was based on diminution in market value of the property. There is evidence to support the implied finding that the leasehold was damaged in this amount. We therefore affirm the judgment.